[No. 7,490.—Department Two.]
August 30, 1882.

## A. A. FERGUSON ET AL. v. RICHARD NEVILLE.

CAPACITY OF ALIENS TO HOLD TITLE TO REAL ESTATE—TITLE TO MINING CLAIM.—A *bona fide* resident of the State, though not a citizen of the United States, or having declared his intention to become such, may by conveyance acquire and hold the title of the locators of an unpatented mining claim acquired under Sections 2319 and 2322 of the U. S. Revised Statutes; and has a full and complete right to convey the same.

ID.—INQUEST OF OFFICE.—An alien may purchase land or take it by devise, and his claim will be good against every person but the State.

APPEAL from an order granting plaintiffs a new trial in the Superior Court of the County of Nevada. CALDWELL, J.

*C. W. Cross,* for Appellant.

*Dibble & Kitts* and *Searls, Niles & Searls,* for Respondents.

MORRISON, C. J.:

The statement on motion for a new trial in the above case presents the following state of facts: The plaintiffs on the trial introduced evidence showing that on the seventh day of December, 1876, the mining ground described in the complaint was a portion of the mineral land of the United States; that

on that day Rose and Rehberg, who were both citizens of the United States, over the age of twenty-one years, located said ground as a mining claim in accordance with the local rules and customs of miners in that vicinity, and according to, and fully complying with, the provisions of the Acts of Congress relating to such locations; that thereupon Rose and Rehberg went into the possession and occupancy of the premises, each claiming the undivided one half thereof, and remained in the possession and occupancy thereof until May, 1877, at which time Rehberg conveyed his interest to one Hoffman, a citizen of the United States, over the age of twenty-one years; and that thereafter Rose and Hoffman remained in possession of the premises in controversy until the month of July, 1877, in which month they conveyed to Wing Hung and others, who were aliens, and natives of the Empire of China. None of the grantees of Rose and Hoffman had made or filed a declaration of intention to become citizens of the United States. In July, 1878, Wing Hung and others, the grantees of Rose and Hoffman, conveyed the mining ground in controversy to the plaintiff Ferguson, who entered into the possession and occupancy of the same until the twenty-eighth day of October, 1878. On the seventh day of October, 1878, the plaintiff, Ferguson, conveyed an undivided one half interest in the property to the plaintiff Hillhouse. It is admitted, that on the twenty-eighth day of October, 1878, the grantors of the defendant, who were citizens of the United States, and over the age of twenty-one years, located the ground in dispute as a mining claim, in accordance with the local rules and customs of miners in that vicinity, and in accordance with the provisions of the Acts of Congress relating to such locations, and that defendant and his grantors remained in the possession thereof down to the time when this suit was commenced.

Plaintiffs brought this action to quiet their title to the mining ground, and were nonsuited. Afterwards the Court below set aside the nonsuit and granted plaintiffs a new trial. From the order granting a new trial defendant prosecutes this appeal.

Defendant relies upon Section 2319 Revised Statutes, of the United States, in support of the appeal. That section reads as follows:

" All valuable mineral deposits in land belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase by citizens of the United States and those who have declared their intention to become such under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

The defendant's argument is, that Wing Hung and his co-grantees were not citizens of the United States and had never declared. their intention to become such, and therefore they were excluded from the operation of the Act of Congress, by its express terms. But the answer to this argument is, that they did not take any steps to acquire the title under the Act of Congress ; but the title was acquired by persons under whom they claim (Rose and Rehberg), who were citizens of the United States, and in all respects qualified to occupy and purchase under Section 2319, referred to above. They located the claim in December, 1876, in accordance with the local rules and customs of miners in that vicinity, and also according to, and having fully complied with, the provisions of the Acts of Congress relating to such locations. They also went into the possession and occupancy of the claim, and continued to occupy and possess the same until they sold to Wing Hung and others. The title, therefore, passed out of the United States, and was vested in Rose and Rehberg, who being the owners thereof, had a right to make any sale or disposition of the property not inconsistent with the laws of this State. By Article 1, Section 17, of the Constitution in force at that time, it was provided that "foreigners who are, or who may hereafter become, *bona fide* residents of this State, shall enjoy the same rights in respect to the possession, enjoyment and inheritance of property as native-born citizens."

It is admitted in the record in the case, that the grantors of plaintiffs, although Chinese, were all of them *bona fide* residents of the State of California. It is very clear, therefore, that Wing Hung and his co-grantees were capable of taking by purchase the mining ground in controversy, and their grantors having acquired the title of the United States

to such mining ground, had a full and complete right to convey the same.

But we might concede that Wing Hung and his associates had no right to take and hold the fee by purchase, and the result, so far as the present decision is concerned, would be the same. They could take and hold until " office found." " Though an alien may purchase land, or take it by demise, yet he is exposed to the danger of being divested of the fee, and of having his lands forfeited to the State, upon an inquest of office found. His title will be good against every person but the State. * * * If the alien should undertake to sell to a citizen, yet the prerogative right of forfeiture is not barred by the alienation, and it must be taken to be subject to the right of the Government to seize the land. His conveyance is good as against himself, and he may, by a fine, bar persons in reversion and remainder, but the title is still voidable by the sovereign upon office found." (2 Kent's Com. 61, 62.)

It is not pretended there has been an " inquest of office," or that any steps were ever taken on behalf of the Government to seize the land, or in any manner to test the right of Wing Hung and his co-grantees to hold the same; but the case simply shows that after there was a divestiture of the title of the United States by a valid location under the rules and customs of the vicinity by a locator, in accordance with the mining laws, and after an adverse possession and occupancy, long continued and still existing at the time, the defendant's grantors attempted to acquire the title to the mining ground in controversy by a second location. We are of the opinion that they acquired no right or title by such location, and that the new trial was properly granted.

Order affirmed.

SHARPSTEIN and THORNTON, JJ., concurred.